Terri Lee HALDERMAN et al.

v.

PENNHURST STATE SCHOOL AND HOSPITAL et al.

Civ. A. No. 74–1345.

United States District Court, E.D. Pennsylvania.

Jan. 24, 1983.

David Ferleger, Herbert B. Newberg, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

23. I consider it noteworthy, however, that the contract at issue in *Lavach* preceded the acquisition of control.

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for Com. of Pa.

Thomas Gilhool, Public Interest Law Center, Philadelphia, Pa., for Pennsylvania Assn. for Retarded Citizens.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Assn.

Terisa Chaw, Civil Rights Div., Dept. of Justice, Washington, D.C., for U.S.

R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

On December 23, 1982, this Court, 555 F.Supp. 1142, entered an Order requiring the Commonwealth defendants in this litigation to "administer and assure funding for the certified advocate program as currently operated." On December 29, 1982, the Commonwealth defendants submitted their proposed plan for complying with the Order of December 23, 1982 (see Dkt. No. 1726, filed January 3, 1983). On January 4, 1983, counsel for the plaintiff class filed a Motion for Contempt for Violation of the December 23, 1982 Order, averring that the Commonwealth defendants' proposal was, on its face, contempt of this Court's Order and that the conduct of the Commonwealth defendants constituted contempt of this Court's Order. On January 17, 1983, this Court held a hearing for the purpose of determining whether the Commonwealth defendants' advocacy plans and actions since January 1, 1983 comply with the Court's Memorandum and Order of December 23, 1982. Based on the evidence presented at the hearing, for the reasons hereinafter set forth, this Court has determined that the Commonwealth defendants are not in compliance with the December 23 Order and did not take all reasonable steps within their power to comply with the December 23 Order. This Court will therefore enter an Order requiring the Commonwealth defendants to achieve compliance with the December 23 Order on or before February 15, 1983 and to file with this Court a report of their actions to achieve compliance on or before January 31, 1983.

This litigation, whose history is discussed extensively in the Court's Memorandum of January 14, 1983, began in 1974 as a class action on behalf of retarded residents of the Pennhurst State School and Hospital. After a 32-day trial, this Court made findings of fact and conclusions of law holding that the conditions at Pennhurst violated the statutory and constitutional rights of the retarded residents of Pennhurst. As part of the injunctive remedy ordered by the Court, a professional planning process was to be undertaken for each class member with the aim of providing each retarded class member minimally adequate habilitation in the least restrictive environment. In this planning process, the parent or other close relative or guardian of the class member normally serves as an advocate for the retarded individual during the planning process, which also involves the retarded citizen's case manager, who is a county employee, and Pennhurst professional staff, who are state employees. The advocate is necessary to ensure that a voice independent of the government-employed professionals may raise questions and issues on behalf of the retarded citizen who in many instances is not capable of articulating his or her own needs. (For a more complete description of the IHP planning process, see Memorandum of December 22, 1982).

The Court's original injunctive order in this case (see Order of March 17, 1978, 446 F.Supp. 1295, 1326) directed the Commonwealth defendants to establish a program to provide such advocates. This requirement remains a part of the current primary injunctive order in this case, the Order of April 24, 1980, which amended the Order of March 17, 1978 to conform to the instructions of the en banc affirmance and remand of this case by the United States Court of Appeals for the Third Circuit. Specifically, the Order of April 24, 1980 requires that

In the absence of a parent/guardian, or at their request, or upon the request of a Pennhurst resident, a trained Certified Advocate shall be assigned to the member of the plaintiff class consistent with the IHP guidelines.

Order of April 24, 1980, paragraph 9.0, at 31.

The defendants having failed to establish a program of Certified Advocates, the Office of the Special Master began a program whereby advocates were trained, certified, paid and supervised so that class members who did not have interested parents or guardians would have someone articulating their needs before, during, and after the individual habilitation planning process.

On August 12, 1982, this Court entered an Order directing the Special Master to plan to phase out the operations of the Office of the Special Master on or before December 31, 1982. On September 22 and 29, 1982, this Court, mindful of the planned phaseout of the Office of the Special Master, held a hearing concerning the Commonwealth defendants' plans to provide advocacy services for those class members requiring an advocate. At the conclusion of the hearing, the Court directed the Commonwealth defendants to provide this Court with a definite plan for advocacy (*see* Order of September 29, 1982). This plan was to be submitted by November 1, 1982. On November 1, the Commonwealth defendants requested an additional 30 days to prepare the plan; the Court granted this request (*see* Order of November 12, 1982). On December 2, 1982, the Commonwealth defendants submitted a proposal (*see* Dkt. No. 1681) which they admitted was still in the process of being negotiated with an outside agency (*see* Dkt. No. 1761, letter of Edwin R. Frownfelter, Executive Director of Pennsylvania Developmental Disabilities Advocacy Network, regarding friend advocacy to this Court (dated December 23, 1982)).

The Court was thus, in late December, 1982, presented with a situation that could endanger the rights of the retarded class members in that the certified advocacy services which they had been receiving from the Special Master could not continue to be administered by the Master after December 31, 1982, the date upon which the Office of the Special Master ceased its operations. Furthermore, the Commonwealth defendants had not submitted a plan for certified advocates which would become operative on January 1, 1983. Because this situation created substantial risks to the retarded residents of Pennhurst, this Court noted that

The Court must, therefore, in order to protect the rights of those plaintiff class members who have no parent or guardian to speak on their behalf, enter an Order requiring the Commonwealth defendants to continue the certified advocacy program currently in existence until such time as the Commonwealth defendants complete their formulation of an alternative advocacy system which will adequately protect the right of those class members requiring advocates.

The Special Management Unit of the Pennhurst Implementation Team established by the Department of Public Welfare's Office of Mental Retardation will therefore be required to fund and supervise the certified advocate system currently in place and the Commonwealth defendants shall make such arrangements as are necessary to assure the funding of the program until the Commonwealth defendants establish an advocacy system approved by this Court.

Memorandum of December 23, 1982, 555 F.Supp. at 1144.

In the Order of December 23, 1982, this Court enjoined the Commonwealth defendants to continue to operate and fund the certified advocate program as then operated by the Office of the Special Master. The Order specifically stated that, commencing January 1, 1983,

Commonwealth defendants through the Special Management Unit of the Department of Public Welfare's Pennhurst Implementation Team are responsible for supervising, training, obtaining, providing and paying advocates to represent those class members who have no parent,

guardian, or close relative who will represent them in the individual habilitation planning process.

Order of December 23, 1982, 555 F.Supp. at 1143. The Order specifically provided that it would remain in full force and effect until the Commonwealth defendants obtained this Court's approval of an alternative advocacy system still in the process of being planned by the Commonwealth defendants.

The Court's Memorandum and Order of December 23, 1982 is clear. It requires the Commonwealth defendants to continue to provide the certified advocacy services to the plaintiff class which had heretofore been provided through the program administered by the Office of the Special Master. The December 23 Order required the Commonwealth defendants to assure that the retarded citizens assigned to advocates as of December 31, 1982 or awaiting assignment to advocates on December 31, 1982 receive advocacy services and that any certified advocates employed by the Commonwealth be trained in accordance with the minimum procedures as established pursuant to this Court's Orders. Throughout the course of this litigation, it has always been made clear that certified advocates should be persons who could speak on behalf of the retarded members of the class and who would be sufficiently independent of the parties to this litigation so that the advocate's duties to his or her client would not be compromised. The Memorandum and Order of December 23, 1982 did not compel the Commonwealth defendants to hire the identical two full-time and one part-time advocates employed by the Master's Office or to compensate them at the same rate established by the Master's Office. The Order does, however, clearly require that the certified advocacy services available to the plaintiff class members not be diluted or diminished in any way. With these standards in mind, the Court, based on the evidence presented at the Hearing of January 17, 1982, makes the following findings of fact.

Since January 1, 1983, the Commonwealth defendants have failed to comply with this Court's Order of December 23, 1982 or to begin to act with due diligence and steadfast purpose to implement the Order of December 23. As of January 17, 1983, the Commonwealth defendants had not even obtained the records available to identify the members of the plaintiff class for whom certified advocates had been appointed. The Court further ascertained at the hearing that the Commonwealth defendants had failed to seek the available client files from the two full-time advocates and one part-time advocate who had been serving the plaintiff class members requiring certified advocates.

As of December 31, 102 plaintiff class members were receiving certified advocacy services from the two full-time and one part-time certified advocates supervised by the Office of the Special Master. At least 18 additional class members not currently served had also been identified as requiring certified advocacy services but had not been provided with advocates. It was testified at the January 17 hearing that a single full-time certified advocate could not effectively serve more than approximately 40 retarded class members. As of December 31, 1982, Tim Spangler and Jeannette Goldberg were the two full-time certified advocates in the advocacy program supervised by the Special Master. Mr. Spangler was responsible for 41 clients and Ms. Goldberg was responsible for 40 class member clients. The part-time certified advocate, Terry Kelly, served 21 clients.

Since the entry of this Court's Order of December 23, 1982 and since January 1, 1983, the Commonwealth defendants have planned to provide certified advocacy for only 42 class members, approximately one-third of the number of class members who had been identified as requiring certified advocates. The Commonwealth defendants have designated only one person as a certified advocate. Furthermore, this person is a Pennhurst employee temporarily on assignment to act as a certified advocate. This person has been temporarily relieved of his Pennhurst position as supervisor of professional services, a position wherein he presided over the Pennhurst professional

staff members who participate in the IHP planning process—the very people whose decisions a certified advocate must be willing to question. The Commonwealth defendants' advocate has not been supervised by the Special Management Unit at Pennhurst, as required by this Court's Order of December 23, but by the Director of the Pennhurst Implementation Team who resides in Harrisburg.

■ The actions and plans of the Commonwealth defendants, as summarized above, show that the Commonwealth defendants are not in compliance with this Court's Order of December 23, 1982. Furthermore, they have taken no steps, nor do they have present plans, which would eventually bring them into full compliance with the December 23 Order. The description given by the Commonwealth defendants as to their interpretation of the December 23 Order and their discussion of alternative means of complying with the Order suggest that they have not acted with due diligence and a steadfast purpose to comply with the Order. The designation of a member of the Pennhurst staff who, until he was appointed temporarily as a certified advocate, had the responsibility to supervise the Pennhurst professional staff would clearly present a conflict of interest in making a determination as to whether he should complain on behalf of a member of the plaintiff class concerning the decisions made by the professionals that he supervised. In its Memorandum of December 23, 1982, this Court clearly stated that an advocate must be independent of the parties to this litigation. This does not mean that an advocate selected by the Commonwealth defendants cannot be a state or county employee. It does mean, however, that in the event a state or county employee is designated as a certified advocate, such an advocate must be one who can exercise independent judgment concerning the habilitation of the retarded class member whom he or she represents and should not be a person who in any way participated in activities which must be reviewed by the certified advocates. At the January 17 hearing, the Commonwealth defendants, who acknowledged the necessity of providing a certified advocate who could

speak freely concerning the needs and desires of a retarded class member, did not offer a satisfactory explanation of this obvious violation of this Court's Orders.

This Court has also often stated that the advocate must be trained in advocacy according to the criteria established pursuant to this Court's Orders. Although the testimony of the Commonwealth defendants established that the temporary advocate appointed by them has extensive experience in the field of mental retardation, he has no training or experience as an advocate.

At the January hearing, the Commonwealth defendants stated that the Special Master's certified advocacy program had provided advocacy services to some class members who were not in need of a certified advocate. As support for this contention, the Commonwealth defendants noted that a certified advocate had been appointed in a few instances at the request of the retarded citizen's parent or guardian where that parent or guardian felt insufficiently knowledgeable to act as the advocate. The observation of the Commonwealth defendants obviously disregarded paragraph 9.0 of the Order of April 24, 1980, which states that certified advocacy services shall be provided in the absence of a parent or guardian, or at the request of a parent or guardian, or upon the request of a Pennhurst resident.

■ This Court's Order of December 23, 1982 did not alter and was not intended to alter the procedures for providing certified advocates as set forth in this Court's prior Orders. In the event the Commonwealth defendants should in the future consider any of the Court's Orders to be unnecessary or ineffective, they should file with this Court a motion pursuant to Fed.R.Civ.P. 60(b) to alter or amend this Court's Orders. Both this Court and the Third Circuit have repeatedly cautioned the Commonwealth defendants that a Rule 60 motion is the proper vehicle for seeking changes in the injunctive Orders of this Court. *See* 673 F.2d 628, 637–38.

■ The hiatus in the certified advocate program poses a very real risk to the members of the class. For example, the evi-

dence presented at the January 17 hearing shows that Valerie Kocher, a Pennhurst resident, is scheduled to be transferred to a community living arrangement during the week of January 24 but is not now receiving the services of a certified advocate. Tim Spangler, one of the two full-time certified advocates in the program operated by the Special Master, testified that there are "significant problems" with her IHP as currently drafted and that the placement proposed for Ms. Kocher may present threats to her personal safety. With no certified advocate to represent her, Ms. Kocher runs the risk of being placed in a community living facility that might be harmful to her. Evidence presented at the January 17 hearing also indicates that Pennhurst residents Mary Rickard, Marie Bronston, and Miguel Rivera are also in immediate need of advocacy services. As a result of the Commonwealth's failure to fully carry out the terms of this Court's Order of December 23, 1982, many members of the plaintiff class have been deprived of advocacy services designed by this Court's Orders to protect those members of the plaintiff class who are without someone capable of speaking out on their behalf.

This Court will therefore enter an Order requiring the Commonwealth defendants to achieve full compliance with the December 23 Order on or before February 15, 1983 and to submit to this Court on or before January 31, 1983 their plans for achieving such full compliance.

The Court has not at this time ruled on plaintiffs' Motion for Contempt for Violation of the December 23, 1982 Order, but said motion will be held in abeyance pending the actions of the Commonwealth defendants, who must establish compliance with this Court's Order of December 23, 1982 on or before February 15, 1983.

### ORDER

AND NOW, this 24th day of January, 1983, a hearing having been held on January 17, 1983 for the purpose of determining whether the plans and actions of the Commonwealth defendants since January 1, 1983 comply with this Court's Memorandum and Order of December 23, 1982, for the reasons set forth in this Court's Memorandum of January 24th, 1983,

IT IS HEREBY ORDERED:

1. The Commonwealth defendants shall take immediate steps to achieve full compliance with this Court's Memorandum and Order of December 23, 1982 on or before February 15, 1983.

2. The Commonwealth defendants shall file with this Court, on or before January 31, 1983, a report of their actions taken to achieve full compliance with this Court's Memorandum and Order of December 23, 1982.

3. The Commonwealth defendants shall ensure that all class members heretofore identified as requiring the services of a Certified Advocate or who hereafter become eligible for the services of a certified advocate receive such services from a person who can exercise independent judgment concerning the habilitation of the retarded class member whom he or she represents and who has not participated in any way in activities which must be reviewed by the certified advocates.

4. This Court's Order of December 23, 1982 remains in full force and effect.